UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINGER HAMILTON,<br><br>         Plaintiff,<br><br>   v.<br><br>ST. JOSEPH'S MEDICAL CENTER, et al.,<br><br>         Defendants. | Civ. No.  S-12-2817 KJM DAD<br><br><br>ORDER |

The motion for summary judgment filed by defendant St. Joseph's Medical Center, aka Dignity Health, is currently pending before the court. Plaintiff, proceeding pro se since the withdrawal of her counsel, has not opposed the motion. After considering the motion and the evidence in the record, the court GRANTS the motion.

I.  BACKGROUND

On October 12, 2012, plaintiff filed a complaint in San Joaquin County Superior Court alleging generally that in October 2010, she informed her supervisor Rick Reed that she was qualified for a Nuclear Medicine Technician position with St. Joseph's Medical Center and wanted to apply for it. Compl., ECF No. 1 at 8 ¶ 11. Reed told her the position was closed. *Id*. He removed the position from the job board and gave it to Scott Donley, a Caucasian male, who was not qualified for the position because he had not passed the Nuclear Medicine Board exam, whereas plaintiff had passed and was the best qualified for the job at the time she sought to apply.

1

*Id.* She alleges she was denied the position because of her race and sex. *Id.* Plaintiff brings two claims: (1) violation of California Civil Code § 12940 (FEHA); (2) violation of Title VII of the Civil Rights Act of 1964. *Id.* at 10-12 ¶¶ 21-29.

II. STANDARDS FOR A SUMMARY JUDGMENT MOTION

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010).

If a party fails to respond to a motion for summary judgment, the court may consider the facts cited in the motion as undisputed, but it must still "'determine the legal consequences of these facts and the permissible inferences from them.'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting FED. R. CIV. P. 56, Advisory Committee Notes (2010)). It may not grant summary judgment, however, solely because of the party's failure to oppose. *Id*.

III. UNDISPUTED FACTS

Hamilton, an African-American, began working at St. Joseph's Medical Center in 1996 as a Radiology Technologist and throughout her employment she has been a member of the Service Employees International Union—United Healthcare Workers West (SEIU-UHW). Dep. of Ginger Hamilton (Hamilton Dep.) at 11:23-24;[2] Decl. of Frank Crua, ECF No. 17-3 ¶ 12; Compl., ECF No. 1 ¶ 1. At all relevant times her direct supervisor was Rick Reed. Decl. of Rick

---

[2] The court cites to the complete deposition transcript, which defendant lodged electronically in conformance with Local Rule 133(j). Defendant has provided the pertinent portions of the transcript as exhibits to its motion.

1  Reed, ECF No. 17-4 ¶¶ 1, 3; Hamilton Dep. at 40:6-8.  Reed's supervisor, and thus Hamilton's
2  second-level supervisor at all relevant times, was Frank Crua, Director of Imaging Services.
3  Hamilton Dep. at 20:21-21:2; Decl. of Frank Crua, ECF No. 17-3 ¶ 2.  In 2008, 2009 and 2010,
4  Reed consistently rated Hamilton as exceeding standards in her performance reviews; Hamilton
5  thought all the evaluations were fair.  Decl. of Matthew Ruggles, ECF No. 17-5 ¶ 4 & Ex. C, ECF
6  No. 17-8 at 2-32; Hamilton Dep. at 50:9-56:3.

7  On February 2, 2009, Scott Donley, a part time Radiology Technologist, was the
8  only applicant for a position as a part-time Alternative Nuclear Medicine Technologist; although
9  he had completed the training course, he was hired contingent on his successful completion of the
10 state board exam.  ECF No. 17-3 ¶ 7; ECF No. 17-4 ¶ 5.  At the time, it was common practice to
11 hire people who had completed the nuclear medicine training, but not allow them to work until
12 they passed the state exam.  ECF No. 17-3 ¶ 8; ECF No. 17-4 ¶ 6.  Hamilton did not apply for the
13 position in 2009 because she had not completed the training course.  Hamilton Dep. at
14 75:23-76:3.

15 Donley never performed any work as a Nuclear Medicine Technologist because he
16 never notified the Hospital he had passed the state exam.  ECF No. 17-3 ¶ 3; ECF No. 17-4 ¶ 7.
17 To work as a Nuclear Medicine Technologist, a candidate had to complete a certified training
18 course and pass the state board exam.  ECF No. 17-3 ¶ 6; Hamilton Dep. at 15:19-16:25.

19 Hamilton completed her training in September 2010 and passed the state board
20 exam in October 2010.  Hamilton Dep. at 56:10-57:8.  She returned to work full-time as a
21 graveyard Radiology Technologist, but told Reed she had passed her exam and was ready to work
22 in nuclear medicine.  Hamilton Dep. at 58:11-24.  According to Reed and Crua, there was not a
23 job posting for a Nuclear Medicine Technologist when Hamilton completed her training or passed
24 the exam.  ECF No. 17-3 ¶ 10; ECF No. 17-4 ¶ 8.  Hamilton agreed that a person could not be
25 hired into a position unless there had been a posting for that position.  Hamilton Dep. at
26 76:22-78-1.  Hamilton did say she believed a part time nuclear medicine position posted in April
27 2010 had not been filled at the time she passed the state exam.  Hamilton Dep. at 60:15-21, 64:21.
28 She also said she told Reed he should let her apply for Donley's position because Donley had not

4

1  passed the exam.  Hamilton Dep. at 78:10-16.  In addition, Hamilton believed Lourdes Fernandez,
2  a supervisor, was working as a Nuclear Medicine Technologist until a qualified employee was
3  found to fill it even though it was a union position.  Hamilton Dep. at 62:8-20.
4  On November 23, 2010, a per diem Nuclear Medicine Technologist position was
5  posted and remained open for seven days, as required by the Collective Bargaining Agreement
6  (CBA).  ECF No. 17-3 ¶ 10; ECF No. 17-4 ¶ 9; Hamilton Dep. at 76:22-77:8.  A per diem
7  position is one with very limited hours, even fewer than the twenty hours typical of a part-time
8  employee.  *Id*. at 64:14-17.  Hamilton applied on November 23, and Reed, Crua and Fernandez
9  hired Hamilton for the position on November 30.  ECF No. 17-3 ¶ 11; ECF No. 17-4 ¶ 9; ECF
10 No. 17-8 at 33.  In the beginning, Hamilton worked eight or sixteen hours a week in nuclear
11 medicine, receiving premium pay for those hours, and the rest as a Radiology Technologist.
12 Hamilton Dep. at 85: 11-25; ECF No. 17-3 ¶ 5.  After about four months, she spent most of her
13 time in nuclear medicine but did not have the full-time title.  Hamilton Dep. at 70:19-25,
14 89:10-23.  Because she was still considered per diem, she was on occasion pulled out of nuclear
15 medicine and sent to diagnostic radiology when that department needed help.  Hamilton Dep. at
16 92:25-94:25.  She used a different job code for the hours she worked in nuclear medicine, which
17 increased her pay by about five percent.  ECF No. 17-3 ¶ 5; ECF No. 17-4 ¶ 10.
18 In July 2011, Hamilton complained to her union representative that Fernandez, the
19 supervisor, was working in a union position in nuclear medicine, and asked for a full time
20 Nuclear Medicine Technologist position.  Hamilton Dep. at 86: 16-88:8.  Hamilton clarified at
21 deposition that Fernandez's filling the full time position was not part of her discrimination claim.
22 Hamilton Dep. at 97:15-21.  Hamilton was given the title of Nuclear Medicine Technologist in
23 September 2011.  Hamilton Dep. at 88:7-10.
24 Hamilton has never heard Reed make derogatory comments or jokes about African
25 Americans or women.  Hamilton Dep. at 39: 3-41:24.  In 2003, Reed would not allow her to work
26 the evening shift until she got stronger after knee surgery, saying that she should not return to
27 work until she was ready to do her regular shift.  Hamilton Dep. at 36:11-25.  Before her surgery,
28 Hamilton asked for fewer shifts on the portable X-ray machine, but Reed refused, even though

5

Martha Vasquez, an Hispanic woman, was taken off the portable schedule because of knee problems. Hamilton Dep. at 42:16-44:11, 46:12. She does not believe Crua is biased against her. Hamilton Dep. at 48:6-8.

IV. ANALYSIS

    A. Discrimination Claim

  Under the FEHA, it is illegal for an employer to discriminate against an employee "in compensation or in terms, conditions, or privileges of employment" on the basis of race, color, or national origin. CAL. GOV'T CODE § 12940(a). Under Title VII, it is unlawful "for an employer to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U .S.C. § 2000e–2(a)(1).

  In the absence of direct evidence of discriminatory intent, as here, courts apply the *McDonnell Douglas* burden-shifting framework to FEHA and Title VII claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (applying Title VII framework to FEHA claim). Under this framework, the plaintiff must, in most cases, first establish a prima facie case of discrimination, the elements of which will vary according to the specific situation. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000). Generally, a plaintiff is required to show: "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action . . . and (4) some other circumstance suggest[ing] discriminatory motive [i.e. similarly situated employees were treated more favorably]." *Id.* at 355 (citations omitted); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). The plaintiff's burden at this stage is "not onerous." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 253 .

  An "adverse employment action" is a "shorthand expression referring to the kind, nature, or degree of adverse action against an employee that will support a cause of action under" FEHA. *Yanowitz v. L'Oreal U.S.A.*, 36 Cal. 4th 1028, 1049 (2005). Such an action must

1  "materially affect[] the terms, conditions, or privileges of employment," *id.* at 1051, or "[be]
2  reasonably likely to impair a reasonable employee's job performance or prospects for
3  advancement," *id.* at 1054–55; *see also Blount v. Morgan Stanley Smith Barney LLC*,
4  ___ F. Supp. 2d ___, 2013 WL 5663480, at *3 (N.D. Cal. Oct. 17, 2013) (in a Title VII case,
5  stating that "an adverse employment action is one that 'materially affect[s] the compensation,
6  terms, conditions, or privileges of . . . employment'") (quoting *Chuang v. Univ. of Ca. Davis, Bd.*
7  *of Trustees*, 225 F.3d 1115 (9th Cir. 2000)) (alterations in original).

8  If the plaintiff makes the requisite showing, "the burden shifts to the employer to
9  rebut the presumption [of discrimination] by producing admissible evidence, sufficient to raise a
10 genuine issue of fact and to justify a judgment for the employer that its action was taken for a
11 legitimate, nondiscriminatory reason." *Guz*, 24 Cal. 4th at 355–56 (citation, alterations and
12 internal quotation marks omitted); *Villiarimo*, 281 F.3d at 1062.  If the employer succeeds, the
13 plaintiff "must then . . . attack the employer's proffered reasons," *id.*, with "'specific, substantial
14 evidence of pretext,'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (quoting
15 *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  Such evidence must be sufficient to
16 allow a trier of fact to conclude "*either*: (a) that the alleged reason for [the adverse employment
17 action is] false, *or* (b) that the true reason for [the adverse employment action is] a discriminatory
18 one," *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996) (emphasis in
19 original).

20 There is, however, one additional wrinkle: when a defendant-employer moves for
21 summary judgment, the "'burden is reversed . . . .'" *Dep't of Fair Emp't & Hous. v. Lucent*
22 *Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal.
23 App. 4th 215, 224 (1999)); *see also Kelly v. Stamps.com Inc.*, 135 Cal. App. 4th 1088, 1097–98
24 (2005) (citing *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 850–51 (2001)).  Thus, the moving
25 defendant bears the initial burden to "show either that (1) plaintiff [can] not establish one of the
26 elements of the FEHA claim or (2) there [is] a legitimate, nondiscriminatory reason" for its
27 actions.  *Lucent*, 642 F.3d at 745 (citation, alterations and internal quotation marks omitted)*.*
28

7

1    To avert summary judgment, the employee must then "'demonstrate either . . . that
2 the defendant's showing [is] in fact insufficient or . . . that there [is] a triable issue of fact material
3 to the defendant's showing.'" *Id.* at 746 (quoting *Hanson*, 74 Cal. App. 4th at 225).  The
4 employee may do this by establishing pretext, "'either directly by persuading the court that a
5 discriminatory reason more likely motivated the employer or indirectly by showing that the
6 employer's proffered explanation is unworthy of credence.'"  *Id.* (quoting *Godwin v. Hunt*
7 *Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)).  "An employee . . . [cannot] simply show the
8 employer's decision was wrong, mistaken, or unwise."  *Id.* (citation and internal quotation marks
9 omitted).  As noted above, the employee's circumstantial evidence "'must be specific' and
10 'substantial.'"  *Id.* (quoting *Godwin*, 150 F.3d at 1221).

11    Defendant argues plaintiff cannot establish a prima facie case of discrimination
12 because she did not experience an adverse employment action.  ECF No. 17-1 at 9.  Specifically it
13 contends that plaintiff applied for the per-diem Nuclear Medicine Technologist position first
14 posted on November 23, 2010 and was given the position on November 30.  *Id*.  It acknowledges
15 plaintiff's argument that she should have been given a full-time position when she first applied
16 because a supervisor was working in the position even though it was covered by the Union's
17 CBA, but says plaintiff conceded this circumstance had nothing to do with discrimination.  *Id*.

18    Defendant has presented evidence that there was no posting for a nuclear medicine
19 position when plaintiff first approached Reed in October 2010.  Hamilton testified there had been
20 a posting for a part-time nuclear technologist in April 2010 and so far as she knew it had not been
21 filled when she approached Reed in October 2010.  Hamilton Dep. 60:12-21.  Her speculation
22 about the availability of that position does not create an issue of fact on this question.  *Nelson v.*
23 *Pima Cmty. College,* 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation
24 do not create a factual dispute for purposes of summary judgment.").

25    "Although the *McDonnell Douglas* formula does not require direct proof of
26 discrimination, it does demand that the alleged discriminatee demonstrate at least that [the]
27 rejection did not result from the two most common legitimate reasons on which an employer
28 might rely to reject a job applicant:  an absolute or relative lack of qualifications or the absence of

8

a vacancy in the job sought." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977); *see also Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1136-37 (10th Cir. 2004) (stating that plaintiff had not established a prima facie case of discrimination because he did not show the position he sought existed during his tenure); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 781 (D. Md. 2010) ("An employer cannot be found to have discriminated against an employee by not promoting him or transferring him into a position that does not even exist."); *Morgan v. Fed. Home Loan Mortg Corp.*, 172 F. Supp. 2d 98, 109 (D.D.C. 2001) (finding plaintiff had not established a prima facie case because he did not show the positions he applied for were available).

To the extent plaintiff argues that defendant should have given her a full-time position in nuclear medicine in November 2010, the claim fails. That a supervisory employee was handling the nuclear medicine technologist's position had nothing to do with discrimination. Hamilton Dep. at 97:15-21.

Defendant does not directly address plaintiff's claim in her complaint that Reed should have made Donley's position available when plaintiff passed her state exam. Plaintiff claims that because Donley was not actually working in nuclear medicine, the position either remained available or could have been made available for her. Under this theory, Reed's failure to free up the position by removing Donley meant that a unqualified Caucasian male remained in the job even though plaintiff had become qualified for the position. However, as noted, the evidence is undisputed that there was no current posting for the job plaintiff wanted, and there is no evidence in the record permitting a reasonable factfinder to infer defendant had any obligation to remove a less qualified employee from a position in order to offer the position to a more qualified person interested in the job. *See Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1032 (7th Cir. 2004) ("[T]he failure of the Slinger Board to create a new position for Hottenroth cannot, as a matter of law, be considered an adverse action . . . [¶] . . . [A]n adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled . . . ."); *Leatherbury v. C & H Sugar Co., Inc.*, 911 F. Supp. 2d 872, 881 (N.D. Cal. 2012) ("The FEHA does not require 'the employer to have good

cause for its decisions.'") (citation omitted); *Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 990 (D. Ariz. 1999) (stating that an employer's decisions need not satisfy "the logic of ruthless efficiency" so long as they are not discriminatory).

Defendant does argue plaintiff cannot establish discriminatory animus for whatever decisions it made about Donley and plaintiff. It agrees that Donley was hired as a nuclear medicine tech before he had passed the state exam, but says its practice had changed by the time plaintiff sought the position. It also argues there is nothing in the record suggesting that Reed, who consistently evaluated plaintiff highly, harbored any animus based on either plaintiff's race or gender. *Id.*

First, defendant's hiring of Donley in 2009 for a position he was not qualified to hold says nothing about discrimination against plaintiff: it is undisputed that plaintiff did not apply for the nuclear medicine position in 2009 because she had not finished her studies. She cannot base a claim of discrimination on the fact that a Caucasian male was given a position she did not seek. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) ("If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote."); *Ibarbia v. Regents of the Univ. of Ca.*, 191 Cal. App. 3d 1318, 1328 (1987) (stating that a plaintiff could not establish a prima facie case under FEHA when he had not applied for the job).

Second, plaintiff cannot show that Donley was similarly situated because the policy of hiring technologists before they had passed the state exam changed by the time plaintiff applied. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (stating plaintiff must show employees allegedly receiving more favorable treatment "are similarly situated . . . in all material respects").

Finally, plaintiff claims Reed acted with discriminatory intent as shown by the fact that he refused to adjust her schedule when she sought to return from knee surgery; she has not shown, however, that she was singled out for such treatment. She also argues she asked Reed to relieve her of an obligation to use the portable X-ray machine before her knee surgery, but he

10

refused, even though Martha Vasquez had been taken off that rotation because of knee problems. Without more information about the comparative severity of the two employees' knee problems, and how their problems limited ability to work, a reasonable factfinder could not find Reed's decisions in the two cases suggests any discriminatory animus against Hamilton.

B.  Failure to Prevent Discrimination

Under the FEHA, it is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." CAL. GOV'T CODE § 12940(k).  When there is no viable claim of discrimination, as here, there is no claim for failure to prevent discrimination.  *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002); *Ruiz v. Sysco Corp.*, No. 09–CV–1824–H (MDD), 2011 WL 3300098, at *6 (S. D.Cal. July 29, 2011).

IT IS THEREFORE ORDERED that defendant's motion for summary judgment, ECF No. 17, is GRANTED and this case is CLOSED.

DATED: June 11, 2014.

_____
UNITED STATES DISTRICT JUDGE